# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2021

Lyle W. Cayce
Clerk

No. 20-20631
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHIJIOKE VICTOR OKORO, *also known as* CHIJI V. OKORO, *also known as* VICTOR OKORO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:19-CV-4837

Before DAVIS, STEWART, and DENNIS, *Circuit Judges*.

PER CURIAM:*

Chijioke Victor Okoro appeals the district court's order granting the Government's Rule 12(c) Motion for Judgment on the Pleadings. Okoro was

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-20631

naturalized in 1999 but convicted of various federal crimes in 2002. The Government moved to revoke his naturalization. We AFFIRM.

## I. Factual and Procedural History

Chijioke Victor Okoro was a licensed physician in Houston, Texas from 1989 to 2003. He owned and operated several medical clinics. Okoro is a native of Nigeria, and he applied for naturalization in November 1997. Immigration and Naturalization Services (INS) approved his application in May 1999. On June 25, 1999, Okoro was admitted as a naturalized citizen and issued a Certificate of Naturalization.

In February 2002, a grand jury indicted Okoro on twenty-five counts, including (1) fifteen counts of mail fraud under 18 U.S.C. § 1341; (2) three counts of filing false federal income tax returns under 26 U.S.C. § 7206(1); and (3) seven counts of health care fraud under 18 U.S.C. § 1347. The counts stemmed from Okoro's conduct between 1995 and 2002. During that time, Okoro billed Medicare for treatments that he never provided and funneled the excess payments to his clinics. In October 2002, a jury convicted him of all twenty-five counts. Okoro was ultimately sentenced to 151 months imprisonment and three years of supervised release in August 2005.[1]

In December 2019, the Government filed a complaint seeking revocation of Okoro's naturalization on four grounds: (1) he illegally procured naturalization because he committed a crime involving moral turpitude during the statutory period; (2) he illegally procured his naturalization because he committed unlawful acts adversely reflecting on his moral character during the statutory period; (3) he illegally procured

---

[1] Okoro was originally sentenced to the same length of imprisonment in 2002, but he appealed. We affirmed his conviction and remanded for resentencing. *United States v. Okoro*, 213 F. App'x 348, 352 (5th Cir. 2007) (per curiam).

No. 20-20631

naturalization by providing false testimony during his naturalization interview; and (4) he willfully misrepresented and concealed material facts during his naturalization proceedings.

The district court granted the Government's Rule 12(c) motion, concluding that Okoro illegally procured his naturalization while having committed unlawful acts adversely reflecting on his moral character. The district court did not reach the other grounds for the motion. This appeal followed.

## II. Standard of Review

"We review [the] district court's dismissal under Federal Rule of Civil Procedure 12(c), applying the same de novo standard as to a Rule 12(b)(6) motion to dismiss." *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 873 (5th Cir. 2021).

## III. Discussion

Okoro argues that the district court erred when it granted the Government's motion. He argues that the granting of the motion violated his right to due process and that the motion was improperly granted in light of material fact issues and possible affirmative defenses.

### 1. Due Process Concerns

Okoro asserts that the district court erred by granting the motion because "denaturalizing an individual without the full benefits of trial results in severe due process deprivations." We disagree.

Okoro argues that he was deprived of his right to allocution before being deemed denaturalized. Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires sentencing judges to permit defendants to speak before they are sentenced. FED. R. CRIM. P. 32(i)(4)(A)(ii). The right is only guaranteed in criminal proceedings. *See* FED. R. CRIM. P. 1(a)(1)

("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States.). "A denaturalization suit is not a criminal proceeding." *Schneiderman v. United States*, 320 U.S. 118, 160 (1943). Okoro did not have a right to allocution under the Federal Rules, and we decline his invitation to expand the right to non-criminal proceedings.

Okoro does not identify any other rights of which he was allegedly deprived. Moreover, our sister circuits have concluded that denaturalization proceedings require fewer due process protections than criminal proceedings. *See United States v. Mandycz*, 447 F.3d 951, 962 (6th Cir. 2006); *United States v. Schellong*, 717 F.2d 329, 336 (7th Cir. 1983). We thus cannot conclude that Okoro was deprived of his right to due process.

### 2. Merits of the Government's Motion

Okoro next argues that the district court impermissibly granted the Government's motion because there were material fact issues and affirmative defenses that he could have raised. We disagree.

Though the Government listed four justifications for denaturalizing Okoro, the district court only granted the motion pursuant to one of the Government's justifications. The district court concluded that the pleadings demonstrate that Okoro committed unlawful acts reflecting on his moral character during the statutory period.

To acquire citizenship, one must meet several statutory requirements under 8 U.S.C. § 1427. Section 1427(a)(3) provides that "[n]o person . . . shall be naturalized unless such applicant . . . during all the periods referred to in this subsection has been and still is a person of good moral character . . . ." Applicants must maintain good moral character for a statutory period spanning from five years before they file their application for naturalization to the day that they take the oath. *Id.* at § 1427(a).

No. 20-20631

Though Congress did not define "good moral character," it listed convictions for various offenses that prevent individuals from establishing good moral character. *See* 8 U.S.C. § 1101(f)(1)–(9); 8 C.F.R. § 316.10(b)(1)–(3). The list is not exhaustive. *See* § 1101(f)(9) ("The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."). Applicants must also avoid committing offenses that adversely reflect upon their moral character during the statutory period. *See* § 316.10(b)(3)(iii).

We must determine whether the Government's pleadings demonstrate by "clear, convincing, and unequivocal evidence"[2] that Okoro lacked good moral character from November 6, 1992 to June 25, 1999. The Government's complaint alleges that between June 1996 and June 1999, Okoro committed criminal acts including mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341 and 2.

Okoro was convicted in 2002, more than three years after the period during which he was required to demonstrate good moral character. Though Okoro was not convicted of these offenses during the statutory period, the Government proved that he *committed* the offenses during that time. Okoro's offenses involve "dishonesty, false, statement, or fraud [and] reflect adversely on moral character." *United States v. Dor*, 729 F. App'x 793, 798 (11th Cir. 2018) (per curiam).

The offenses fall within § 316.10(b)(3)(iii)'s prohibition on offenses that adversely reflect upon one's moral character. The statute compels the conclusion that Okoro lacked good moral character absent extenuating circumstances. *Id.* at § 316.10(b)(3)(iii). The district court concluded that

---

[2] *Fedorenko v. United States,* 449 U.S. 490, 505 (1981) (quoting *Schneiderman*, 320 U.S. at 125).

No. 20-20631

Okoro did not present evidence of any extenuating circumstances, and we agree.

Okoro's final argument is that he has affirmative defenses of laches and the statute of limitations. However, he failed to raise those defenses before the district court. Okoro's only claim to an affirmative defense is a statement in his answer that "[He] Will Assert Appropriate Affirmative Defenses to the Government Claim."

Okoro argues that his statement adequately raised affirmative defenses, but he relies on cases that are readily distinguishable. He relies on *United States v. GSD&M Idea City LLC,* No. 3:11–CV–1154, 2014 WL 11320447 (N.D. Tex. June 10, 2014). In *GSD&M Idea City,* the district court concluded that a non-pleaded affirmative defense was adequately raised because the elements of the defense appeared "on the face of the complaint and in judicially noticeable facts and materials." 2014 WL 11320447 at *3.

No affirmative defenses are apparent from the pleadings, so the district court could not consider any potential defenses. Okoro failed to raise the defenses and may not present them for the first time on appeal. *See FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

## IV. Conclusion

For the aforementioned reasons, we AFFIRM the district court's order granting the Government's Rule 12(c) Motion for Judgment on the Pleadings.